UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

KHURSHEED SIDDIQI,

                                                Plaintiff,

-against-

NEW YORK CITY HEALTH & HOSPITALS CORPORATION,

                                                Defendant.

**DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

07-CV-2740 (CM)(RLE)

------------------------------------------------------------------- X

       Pursuant to Local Rule 56.1 of the Local Civil Rules of this Court, Defendant submits that the following material facts are not in dispute.

**Background**

       1.     Plaintiff Khurseed Siddiqi ("plaintiff") identifies himself as a male, over the age of 40, of Asian race, Pakistani national origin and Muslim religious faith. See Complaint, Exhibit "A," ¶ "1."

       2.     Plaintiff was transferred from Lincoln Hospital ("Lincoln") to Bellevue Hospital ("Bellevue") in July 1999. See Exhibit "B" at 43:16-17.

       3.     Plaintiff was an Associate Chemist Level I at the Bellevue Department of Pathology Laboratory from July 1999 to October 2003 ("relevant period"). See generally Performance Evaluations, Exhibit "D."

       4.     Dr. Carol Braunstein ("Braunstein") was the Associate Director of the Department of Pathology during the relevant period. See generally Kaplan Memo, Exhibit "H," PER00376-00377, 00304, see also Exhibit "B," at 135:19-20.

5. Dr. Lawrence Kaplan ("Kaplan") was the Director of the Chemistry Laboratory during the relevant period. See Exhibit "B," 48:21; see generally Exhibit "H."

6. Plaintiff reported directly to Laboratory Supervisor Yvette Vernon ("Vernon") during the relevant period. See Exhibit "B," at 48:23-24; see generally Exhibit "D."

7. Vernon is a Christian, female over the age of forty. See Exhibit "B," at 49:24.

8. Plaintiff also reported directly to Laboratory Supervisor, Charles Morant ("Morant") during the relevant period. See Exhibit "B," at 79:21-80:7.

9. Morant is an African American, Christian, male, over the age of forty. See Exhibit "B," at 81:9-18.

10. Both Morant and Vernon prepared the yearly performance evaluations that were given to plaintiff during the relevant period. See generally Exhibit "D,"' Exhibit "B," at 91:17-93, 98:24-99:3.

11. Morant evaluated plaintiff's technical performance and Vernon evaluated plaintiff's attendance. Id.

12. Plaintiff received positive and negative evaluations from Morant and Vernon at Bellevue.

13. Of the six evaluations given to the plaintiff, three noted "satisfactory" overall ratings. See Exhibit "D," 2/00-7/00 Evaluation at 000021; 7/01-10/01 Evaluation at 000038; 10/02-01/03 Evaluation at 000051.

14. Plaintiff received good/average ratings by Morant on the technical component of the evaluations on four occasions. Id. 7/99-1/00 Evaluation at 000017; 7/00-7/01 Evaluation at 000031; 7/01-10/01 Evaluation at 000040; 10/01-10/02 Evaluation at 000047.

15. Plaintiff received average attendance ratings by Vernon on two evaluations. Id. 2/00-7/00 Evaluation at 000021; 7/01-10/01 Evaluation at 000038.

16. Sofiya Postelnik ("Postelnik") was a "daytime" supervisor of the Blood Gas Department that plaintiff occasionally reported to during the relevant period. Id. at 163:4-18.

17. Postelnik is a Russian, Jewish, female over the age of 40. Id. at 164:8-15.

18. Bijan B. Davoudi ("Davoudi") was a "daytime" supervisor that plaintiff occasionally reported to during the relevant period. Id. at 154-17-156:24. 1

19. Davoudi is an Iranian, Jewish, male over the age of 40. Id.

20. As an Associate Chemist, Level I, plaintiff was charged with, among other things (1) running blood tests on patient samples, (2) reporting the results to the patient's physician, (3) making "critical calls" to the doctors in the event of unusual test result and (4) running "delta-checks" on the samples. See Exhibit "B," at 49:25-50:6; see also Position Description, Exhibit "C," PER00004-07; see generally Exhibit "D."

**Plaintiff's Poor Performance**

21. On or about January 15, 2000, emergency room Doctor Hoffman filed a complaint against plaintiff after plaintiff combined the test results from two patient's blood samples, and incorrectly reported that one patient was pregnant. See, Hoffman Complaint, Exhibit "E," 000240-242

22. Plaintiff admitted to making the error and attributed it to a stressful work day. Id. at 000242.

23. On or about April 5, 2000 plaintiff was given his performance evaluation for the period 7/99-1/00. See Exhibit "D," at 00012-18.

24. In the April 2000 evaluation, plaintiff received an overall rating of "needs improvement" based in part on (1) errors made that evidenced plaintiff's general lack of knowledge and (2) a pattern of absenteeism established during plaintiff's first few months at Bellevue. Id.

25. The evaluation noted that plaintiff called in sick on several days before and after a scheduled day off. Id. For example, in 2001 plaintiff called in sick eleven (11) times, ten (10) calls were made before or after a scheduled day off. See Leave Requests, Exhibit "K," 000550-61.

26. Plaintiff submitted a doctor's note on only four of these eleven occasions. Id.

27. Plaintiff was warned about this behavior. See Attendance Warnings, Exhibit "F" 000245-247 (dated 4/16/00), PER00259-61, 272 (dated 4/18/03); see e.g., 7/00-7/01 Evaluation, Exhibit "D," at 000028, 10/01-10/02 Evaluation at 000042-48.

28. Plaintiff's overall work performance did not improve.

29. Plaintiff received a number of performance warnings from his supervisors at Bellevue. See Performance Warnings, Exhibit "G," Bates Stamp No. 000209, 210-14 (dated 6/15/00)(by Morant), PER00369 (dated 2/13/02)(by Morant), 000373 (dated 4/12/02)(by Postelnik), 000395 (dated 11/19/02)(by Postelnik), unstamped (dated 1/9/03)(by Davoudi), 000178-180 (dated 7/22/03)(by Postelnik), PER00408-409 (dated 4/28/03)(by Morant), PER00415,401 (dated 4/29/03)(by Morant). Plaintiff also was warned for failing to run "delta-checks" on patient samples. Id. at 000209 (dated 6/15/00)(by Morant), (dated 4/12/02)(by Postelnik), 000373 (dated 4/12/02)(by Postelnik).

30. On or about January 7, 2002, plaintiff and another technician ran a test on a blood sample received from the emergency room. See Kaplan Memo dated January 11, 2002, Exhibit "H," Bates Stamp No. PER00376-77, 00304.

31. The test revealed that the patient had a "highly elevated" potassium level which denoted possible kidney failure. Id.; see also Exhibit "B," at 85:15-17.

32. Instead of reporting this result, plaintiff waited two hours and then reported an "unable to perform" reading to the patient's doctor. Id.; see also Exhibit "B," at 87:17-88:3.

33. The Lab Director, Dr. Kaplan, noticed the elevated levels on the lab computer and demanded that plaintiff document the reasons for his failure to report. Id.

34. Plaintiff ignored this demand for two days. Id. also Exhibit "B," at 88:12-89:10.

35. Dr. Kaplan reported both plaintiff and another technician who failed to report the test results to the Associate Director of the Department of Pathology, Carole Braunstein. Id.

36. Based on this incident, plaintiff was served a "Notice and Statement of Charges" for gross misconduct, poor work performance and insubordination. See 2002 Charges, Exhibit "I," Bates Stamp No. PER00289- 92.

37. At the end of Plaintiff's disciplinary conference plaintiff was informed that while he subjectively believed he followed protocol in running the tests, he nonetheless failed "to complete the [reporting] process in its entirety and in a timely fashion." Report and Agreement, Exhibit "J," Bates Stamp. No.PER00285-88 at PER00286.

38. Plaintiff signed an agreement pleading "no contest" to the charges and accepted a two day unpaid suspension. Id at PER00288.

39. Plaintiff sought a transfer back to Lincoln Hospital on February 26, 2003 because his family was experiencing a "medical hardship" that required him to work closer to home. See Transfer Documents, Exhibit "O," PER00203-208.

40. Plaintiff transferred back to Lincoln Hospital on October 27, 2003. See Exhibit "A," ¶ "16."

41. Plaintiff filed an EEOC complaint on or about August 8, 2003. See Exhibit "A"

42. On or about September 18, 2006, defendants' received the "Notice of Charge of Discrimination." See EEOC file, Exhibit "S," letter dated September 18, 2006.

43. Defendants' responded to the charge on or about, December 22, 2006. Id. letter dated December 22, 2006.

44. Plaintiff received a "right-to-sue letter" on or about, January 9, 2007. See Exhibit A.

**Federal Complaint And Plaintiff's Allegations**

45. Plaintiff commenced the instant action on or about, April 4, 2007, alleging that defendants discriminated against him on the basis of his age, race, religion, and national origin by, among other things, giving him unsatisfactory performance evaluations, denying him religious holidays off and denying him a promotion. See generally Exhibit "A," Complaint.[1]

---

[1] The claims are brought under Title VII of the Civil Rights Act of 1964, ("Title VII"), the Age Discrimination in Employment Act, ("ADEA"), § 1981 of the Civil Rights Act of 1866, 42

46. Plaintiff admits that Kaplan did not discriminate against him based on his age. See Exhibit "B," at 186:15-20.

47. Plaintiff admits that Vernon did not discriminate against him based on his religion or national origin. Id. at 108-112, 124.

48. Plaintiff admits that Morant did not discriminate against him based on his race, age, religion and national origin, and asserts that he and Morant were "good friends" up until the time plaintiff allegedly applied for a Level III position. Id. at 137:9-20.

49. During his time at Bellevue, plaintiff requested religious holidays off on three occasions, requesting two (2) days off for each request. See Leave Requests, Exhibit "P." While two requests were denied, one was granted. Id.

50. Plaintiff admitted that the reason his request was denied was because Vernon could not find a substitute to cover his time-off. See Exhibit "B," at 104:21-105:3.

51. With respect to the failure to promote claim, plaintiff admits that he applied for an Associate Chemist Level III position in July 2002. See Exhibit "A," ¶¶ "11" through "14."; Exhibit "B" 69-81, 126:20-128:1.

52. Plaintiff admits that he discovered that the Level III position he applied for was "given" to Morant "around March or April 2003." Id. at 126:20-128:1.

53. Plaintiff admits that he never complained to any supervisors after learning of the alleged "promotion" that Morant received. Exhibit "B," at 127:3-128:1.

54. Morant was promoted to Associate Chemist Level III on November 5, 2001 and held this title during the relevant period. See Rodriguez Declaration, Exhibit "M,"; see also Morant File, Exhibit "N."

---

U.S.C. §1981 ("§1981"), and the New York State and City Human Rights Law, codified at N.Y. Exec Law §296 et seq. ("NYSRHL") and N.Y.C. Admin. Code § 8-107 et seq. ("NYCHRL").

55. Among other things, the qualifications to obtain a Level III position were (1) three years satisfactory full time experience in chemical work <u>or</u> (2) experience in the direction of <u>all</u> lab operations. <u>See</u> Position Description, Exhibit "C," PER00005-07.

56. Plaintiff admitted that he received no supervisory experience while at Bellevue. <u>See</u> Exhibit "B," at 50:15-17.

57. Plaintiff did not have three years of satisfactory experience at Bellevue. <u>See</u> generally Exhibit "D."

58. Plaintiff also claims that defendant retaliated against him. <u>See</u> Exhibit "A" ¶ "13."

59. Plaintiff admits that, during his tenure at Bellevue, he never filed any internal, external, formal or informal written complaints opposing the alleged discrimination he suffered under the supervision of Kaplan, Morant or Vernon. <u>See</u> Exhibit "B" at 107:21-108:6, 127:3-128:1, 160-1602:11, 168:2-170:6.

60. Plaintiff also alleges that he was subjected to a discriminatory hostile work environment. In support of this claim, plaintiff alleges that: (1) Dr. Kaplan micromanaged him, shook his finger in plaintiff's face several times, threatened to make plaintiff's life miserable, yelled at him and, once stated that "you people can't play baseball," and (2) Charles Morant "threatened" his life in July of 2003. <u>See</u> Exhibit "B," at 51-69, 119-124, 128-140, 186-190; Exhibit "A," at ¶¶ "13" and "15.

61. With respect to his claims against Dr. Kaplan, plaintiff admitted that (1) the "criticisms" he received from Dr. Kaplan's were all work related and occurred only "once every other month." Exhibit "B," 53:1-56:23, 121:1-17, 122:12-123:1, 190:24-191;  (2) he could not remember if Dr. Kaplan ever made a comment to him regarding his religion. <u>Id.</u> at 123:6-

124:2; and (3), that Dr. Kaplan "yelled" at him only two times in the four years he was at Bellevue. Id. 190:11-15.

62.     Plaintiff admits that Kaplan said "you people can't play baseball" in a group situation and in a "joking" manner. Id. at 58:10-60:21, 119:13-120:25. Plaintiff further admitted that this was the only time Kaplan ever made a such a statement. Id.

63.     Plaintiff admits that the alleged threat made by Morant was not motivated by his age, race, religion or national origin. Id. 128:22-129:6; see also 2003 Incident Reports, Exhibit "R," Bates Stamp No. 000277, PER000362, 000575-76.

64.     Plaintiff admits that the Morant threat was motivated by plaintiff referencing confidential information concerning Morant's disciplinary history contained in private union personnel documents. Id.

Dated:     New York, New York
           February 28, 2008

                                        **MICHAEL A. CARDOZO**
                                        Corporation Counsel of the
                                          City of New York
                                        Attorney for Defendant
                                        100 Church Street, Room 2-314
                                        New York, New York 10007-2601
                                        (212) 227-3153
                                        lmartine@law.nyc.gov


                              By:    **ECF**:                /s/
                                             Larry R. Martinez
                                        Assistant Corporation Counsel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KHURSHEED SIDDIQI,

                                               Plaintiff,

-against-

NEW YORK CITY HEALTH & HOSPITALS CORPORATION,

                                             Defendant.

**DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
Attorney for Defendant
100 Church Street, Room 2-314
New York, New York 10007-2601

Of Counsel:   Larry R. Martinez
Tel No.:      (212) 227-3153

Matter No.:2007-017870

*Service of which is hereby acknowledged*:

*New York, New York*   Dated:  ...................................2008

Signed: ................................................................................

Attorney for: .........................................................................